### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| Andrea Sutton,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Experian Information Solutions, Inc.,<br>Equifax Information Services LLC, and<br>TD Bank USA, N.A.,<br><br>　　　　　Defendants. | Civil Action No: 1:23-cv-74<br><br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

## COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF
## THE FAIR CREDIT REPORTING ACT

### INTRODUCTION

1.  The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.

2.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

3.  Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

4.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

5.    The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

6.    The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.

7.    Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

8.    Andrea Sutton ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendants Experian Information Solutions, Inc. ("Experian"), Equifax Information Services LLC, and TD Bank USA, N.A. ("TD") (jointly as "Defendants"), with regard to erroneous reports of derogatory credit information and Defendants' failure to properly investigate Plaintiff's dispute(s).

9.    Defendants failed to properly investigate Plaintiff's dispute, damaging Plaintiff's creditworthiness.

10.   While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

11.   Unless otherwise stated, all the conduct engaged in by Defendants took place in Indiana.

12.   Defendants committed each of these violations knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

13.   Through this Complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

**JURISDICTION AND VENUE**

14.    Jurisdiction of this Court arises under 28 U.S.C. § 1311 and pursuant to 15 U.S.C. § 1681 *et seq*.

15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendant transacts business in this District and a substantial portion of the acts giving rise to this action occurred in this District.

16.    Plaintiff resides in this District.

**PARTIES**

17.    Plaintiff is an adult individual and is "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

18.    Defendant Experian is a business entity doing business in the Southern District of Indiana.

19.    Defendant Experian's registered agent address is: C T Corporation System, 334 North Senate Avenue, Indianapolis, IN, 46204.

20.    Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports.

21.    Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

22.    Defendant Equifax is a business entity doing business in the Southern District of Indiana.

23.    Defendant Equifax's registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

24.    Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

25. Defendant Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

26. Defendant TD is an entity doing business in the Southern District of Indiana.

27. Defendant TD is located at 7000 Target Parkway North Mail Stop Ncd, Brooklyn Park, MN 55445.

28. The creditor named herein, TD, is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

29. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

30. Plaintiff is informed and believes and thereon alleges that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

31. Plaintiff is informed and believes and, on that basis, alleges that at all times mentioned herein each Defendant was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each respective Defendant is liable to Plaintiff for the relief prayed for herein.

## FACTUAL ALLEGATIONS

32. On or about January 23, 2019, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana.

33. Plaintiff's case was assigned Case Number 19-00400-JMC-7 (the "Bankruptcy").

34.     On or about March 24, 2022, Plaintiff filed a Notice of Conversion to Chapter 7 in the Bankruptcy.

35.     On or about March 24, 2022, Plaintiff also filed a schedule of post-petition debts in the Bankruptcy.

36.     The schedule of post-petition debts identified a debt by TD/Target Card Services (the "Debt") as included in Bankruptcy.

37.     On or about March 25, 2022, the Bankruptcy was converted to a Chapter 7 bankruptcy.

38.     TD received notice of the of the post-petition debt schedule.

39.     On or about June 30, 2022, Plaintiff received an Order for discharge in the Bankruptcy.

40.     As a result of the Order for discharge, the Debt was discharged in the Bankruptcy.

41.     Defendants received notice of the discharge in the Bankruptcy.

42.     However, after the discharge in the Bankruptcy, Defendants continued to report derogatory information that was inaccurate, incomplete, and/or materially misleading.

43.     It is improper for Defendants to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court.

44.     TD continued to make multiple attempts to collect the Debt after the conversion to Chapter 7 and the discharge, despite Plaintiff making several calls to TD in which Plaintiff explained to TD the Debt was discharged.

45.     However, Defendants either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information on the Debt after the Bankruptcy as discussed herein.

46. A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about what otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

### *Metro 2 Reporting Standards*

47. Defendants' inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards ("Metro 2"), which provides guidance for credit reporting and FCRA compliance.

48. The Consumer Data Industry Association ("CDIA") publishes Metro 2 to assist furnishers with their compliance requirements under the FCRA.

49. Metro 2 requires that accounts discharged in bankruptcy be reported as discharged in bankruptcy.

50. Courts rely on such guidance to determine furnisher liability. *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation 'Discharged in bankruptcy' and with a zero balance due").

51. On information and belief, Defendants adopted Metro 2 and at all times relevant implemented Metro 2 as an integral aspect of their duties under the FCRA to have in place reasonable policies and procedures to handle investigations of disputed information.

52. Despite Metro 2's instructions, Defendants failed to conform to Metro 2 when reporting on the Debt after Plaintiff filed Bankruptcy as further set forth below.

53. To this end, the adverse reporting on Plaintiff's reports departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

*The White Order*

54.     In 2008, Experian and Equifax settled a class action lawsuit in the Central District of California, wherein they agreed to proactively report accounts that were Chapter 7 bankruptcy debts and discharged in a consumer's bankruptcy proceeding as included in bankruptcy. *See White v. Experian Info. Solutions, Inc.*, No. 8:05-CV-1070-DOC-MLG (C.D. Cal. Aug. 19, 2008) [Doc. No. 338] (the "*White* Order").

55.     In the *White* Order, Experian and Equifax expressly agreed that within sixty days of receipt of notice of a Chapter 7 bankruptcy, they would report all pre-bankruptcy tradelines or collection accounts of certain types in accordance with the "Agreed Bankruptcy Coding." *See White v. Experian Info. Solutions, Inc.*, No. 8:05-CV-1070-DOC-MLG (C.D. Cal. Aug. 19, 2008) [Doc. No. 338], pgs. 20-22.

56.     In the *White* Order, "Agreed Bankruptcy Coding" means that tradelines are to be reported as "discharged" in the consumer's Chapter 7 bankruptcy and should reflect a zero-balance and no past due amount, so as to indicate that no debt is due or owing by the consumer after the discharge date. *See White v. Experian Info. Solutions, Inc.*, No. 8:05-CV-1070-DOC-MLG (C.D. Cal. Aug. 19, 2008) [Doc. No. 338], pgs. 6-8.

57.     Here, Experian and Equifax did not report the Debt using the procedures they expressly agreed to adopt in the *White* Order.

58.     Upon information and belief, Experian and Equifax were actively reporting the Bankruptcy on Plaintiff's credit report.

59.     Experian and Equifax had access to Plaintiff's publicly accessible bankruptcy information.

60.     Experian and Equifax received notice of Plaintiff's bankruptcy discharge.

61.    Yet, despite their knowledge of the Bankruptcy and/or its access to Plaintiff's bankruptcy information, Experian and Equifax chose to report the Debt—a pre-Chapter 7 account—with a balance, a past due amount, and a past due status after Plaintiff's bankruptcy discharge.

62.    Experian's reporting was in violation of its own procedures instituted as a result of the *White* Order.

### The Impact of Inaccurate or Misleading Information on Consumer Reports

63.    A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

    i.    credit or insurance to be used primarily for personal, family, or household purposes;

    ii.    employment purposes; or

    iii.    any other purpose authorized under section 1681b.

64.    As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

65.    A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

66.    The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-

events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

*Credit Scoring*

67.    The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/ .

68.    Defendants' inaccurate and/or materially misleading reporting has caused Plaintiff to suffer from reduced FICO credit scores.

69.    The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

70.    The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

71.    FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

72.    Payment history is typically weighted as the most important aspect of a consumer's overall credit score because it shows how the consumer has managed their finances, including: any late payments, how long the consumer has been managing their accounts, when their last

payments were made, and any recent charges. *See, e.g.,* https://www.transunion.com/credit-score.

73.    A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

74.    Inaccurate or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

75.    Here, the inaccurate, incomplete, and/or materially misleading reporting of the Debt as owing and past due adversely affects Plaintiff's FICO score.

76.    There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score; *i.e.*, a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

77.    Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

### *Experian and TD's Reporting of the Debt on the Experian Credit Report*

78.    On or before September 9, 2022, Plaintiff noticed that Experian and TD were reporting derogatory information about the Debt on Plaintiff's Experian credit report.

79.    Specifically, the Debt was reporting as Open, with a balance of $727, a past due amount of $187, a payment status of 120 days past due, and a balance date of October 3, 2022.

80.    Due to the Debt's inclusion the Bankruptcy and the subsequent discharge, Experian and TD should have reported the Debt as discharged in bankruptcy.

81.    It was inaccurate, incomplete, and/or materially misleading for Experian and TD to report that the Debt was open, with a balance, a past due amount, and a past due payment status.

### *Equifax and TD's Reporting of the Debt on the Equifax Credit Report*

82.    Upon information and belief, on or before September 13, 2022, Equifax and TD were reporting derogatory information about the Debt on Plaintiff's Equifax credit report.

83.    Specifically, the Debt was reporting as Closed, with a charge off status, and a balance.

84.    Due to the Debt's inclusion the Bankruptcy and the subsequent discharge, Equifax and TD should have reported the Debt as discharged in bankruptcy.

85.    It was inaccurate, incomplete, and/or materially misleading for Equifax and TD to report that the Debt was charged off and had a balance.

### *Plaintiff's Dispute to Experian and TD*

86.    On or after September 9, 2022, Plaintiff sent a letter to Experian by certified mail to identify the inaccurate, incomplete, and/or materially misleading information on the Debt that was being reported on Plaintiff's Experian credit report.

87.    In Plaintiff's dispute letter to Experian, Plaintiff identified the Debt, labeled TD Bank USA/Target Card, as improperly reporting a balance, scheduled payment, and past due payment status.

88.    In Plaintiff's dispute letter, she stated that the reporting of the Debt was wrong, as it was included in her bankruptcy and discharged.

89.    Plaintiff included a copy of her discharge order as attached to her dispute letter.

90. Plaintiff's dispute letter was in accord with 15 U.S.C. § 1681i as the dispute notified Experian of the incorrect, incomplete, and/or materially misleading credit information on her credit report.

91. Experian was required to conduct an investigation into the Debt on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

92. Experian was required to send notice of Plaintiff's dispute to TD, pursuant to 15 U.S.C. § 1681i(a)(2).

93. Upon information and belief, Experian notified TD of Plaintiff's dispute.

94. Upon information and belief, TD received notice of Plaintiff's dispute to Experian as to the reporting of the Debt on the Experian credit report.

95. A reasonable investigation by Experian would have indicated that it was reporting the Debt inaccurately, incompletely, and/or in a materially misleading way on the Experian credit report.

96. Experian failed to conduct a reasonable investigation despite notice of the inaccurate, incomplete, and/or materially misleading information on Plaintiff's Experian credit report from Plaintiff's dispute to Experian.

97. A reasonable investigation by TD would have indicated that it was reporting the Debt inaccurately, incompletely, and/or in a materially misleading way on Plaintiff's Experian credit report.

98. Experian and TD failed to conduct a reasonable investigation.

99. Instead, Experian and TD re-reported the Debt inaccurately, incompletely, and/or in a materially misleading way on Plaintiff's Experian credit report.

*Plaintiff's Dispute to Equifax and TD*

100.   On or after September 13, 2022, Plaintiff sent a letter to Equifax by certified mail to identify the inaccurate, incomplete, and/or materially misleading information on the Debt that was being reported on Plaintiff's Equifax credit report.

101.   In Plaintiff's dispute letter to Equifax, Plaintiff identified the Debt, labeled TD Bank USA/Target Credit, as improperly reporting a balance, scheduled payment, and past due payment status.

102.   In Plaintiff's dispute letter, she stated that the reporting of the Debt was wrong, as it was included in her bankruptcy and discharged.

103.   Plaintiff included a copy of her discharge order as attached to her dispute letter.

104.   Plaintiff's dispute letter was in accord with 15 U.S.C. § 1681i as the dispute notified Equifax of the incorrect, incomplete, and/or materially misleading credit information on her credit report.

105.   Equifax was required to conduct an investigation into the Debt on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

106.   Equifax was required to send notice of Plaintiff's dispute to TD, pursuant to 15 U.S.C. § 1681i(a)(2).

107.   Upon information and belief, Equifax notified TD of Plaintiff's dispute.

108.   Upon information and belief, TD received notice of Plaintiff's dispute to Equifax as to the reporting of the Debt on the Equifax credit report.

109.   A reasonable investigation by Equifax would have indicated that it was reporting the Debt inaccurately, incompletely, and/or in a materially misleading way on the Equifax credit report.

110.    Equifax failed to conduct a reasonable investigation despite notice of the inaccurate, incomplete, and/or materially misleading information on Plaintiff's Equifax credit report from Plaintiff's dispute to Equifax.

111.    A reasonable investigation by TD would have indicated that it was reporting the Debt inaccurately, incompletely, and/or in a materially misleading way on Plaintiff's Equifax credit report.

112.    Equifax and TD failed to conduct a reasonable investigation.

113.    Instead, Equifax and TD re-reported the Debt inaccurately, incompletely, and/or in a materially misleading way on Plaintiff's Equifax credit report.

### *Experian and TD's Continued Reporting of the Debt after Plaintiff's Experian Dispute*

114.    On Experian dispute results dated September 29, 2022 ("Experian Dispute Results"), Experian and TD failed to report accurate information about the Debt.

115.    Instead, on the Experian Dispute Results, Experian and TD noted that "the information [Plaintiff] disputed has been verified as accurate[.]"

116.    On the Experian Dispute Results, Experian and TD reported that, as of September 2022, the Debt was open, with a recent balance of $783, and past due in the amount of $246.

117.    On the Experian Dispute Results, the Debt did not note that it was discharged in the Bankruptcy.

118.    Experian and TD reported this inaccurate, incomplete, and/or materially misleading information despite Plaintiff's written dispute to Experian.

119.    Experian and TD's reporting was inaccurate, incomplete, and/or materially misleading because the Debt was discharged in the Bankruptcy and Plaintiff did not owe any amount to TD after June 2022.

120.   Experian and TD's failures were egregious in that Experian and TD received notice of Plaintiff's discharge in the Bankruptcy and also received a copy of the discharge order attached to Plaintiff's dispute letter to Experian.

121.   Despite this, Experian and TD continued to report the Debt inaccurately, incompletely, and/or in a materially misleading way.

122.   In fact, on a credit report dated January 5, 2023, Experian and TD continued to report the Debt with a balance of $823, past due balance of $823, a balance reported date of January 3, 2023, and a payment status of 150 days past due.

### *Equifax and TD's Continued Reporting of the Debt after Plaintiff's Equifax Dispute*

123.   On and Equifax credit report dated December 30, 2022 ("Equifax Post-Dispute Report"), Equifax and TD failed to report accurate information about the Debt.

124.   On the Equifax Post-Dispute Report, Equifax and TD reported that, the Debt was charged off, had a balance of $823, a past due amount of $823, and a charge off amount of $823, with a date reported of Dec 04, 2022.

125.   On the Equifax Post-Dispute Report, the Debt did not note that it was discharged in the Bankruptcy.

126.   Equifax and TD reported this inaccurate, incomplete, and/or materially misleading information despite Plaintiff's written dispute to Equifax.

127.   Equifax and TD's reporting was inaccurate, incomplete, and/or materially misleading because the Debt was discharged in the Bankruptcy and Plaintiff did not owe any amount to TD after June 2022.

128. Equifax and TD's failures were egregious in that Equifax and TD received notice of Plaintiff's discharge in the Bankruptcy and also received a copy of the discharge order attached to Plaintiff's dispute letter to Equifax.

129. Despite this, Equifax and TD continued to report the Debt inaccurately, incompletely, and/or in a materially misleading way.

### *Defendants' Failures and Plaintiff's Damages*

130. It is inaccurate, incomplete, and/or materially misleading to report an account is open when that account was discharged in bankruptcy.

131. It is inaccurate, incomplete, and/or materially misleading to report an account has a balance when that account was discharged in bankruptcy.

132. It is inaccurate, incomplete, and/or materially misleading to report an account is past due or has an amount past due when that account was discharged in bankruptcy.

133. It is inaccurate, incomplete, and/or materially misleading to report an account has a monthly payment amount when the account was discharged in bankruptcy.

134. As evidenced by Experian's failure to report accurate information after the Bankruptcy despite receiving multiple notices of the Bankruptcy discharge and having access to Plaintiff's publicly available bankruptcy information, Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

135. As evidenced by Equifax's failure to report accurate information after the Bankruptcy despite receiving multiple notices of the Bankruptcy discharge and having access to Plaintiff's publicly available bankruptcy information, Equifax failed to follow reasonable procedures to

assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

136. As evidenced by the inaccurate, incomplete, and/or materially misleading re-reporting after Plaintiff disputes to Experian identifying the inaccurate information related to the Debt, Defendants, upon receipt of Plaintiff's disputes, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

137. Defendants failed to review all relevant information provided by Plaintiff in the disputes to Defendants, as required by and in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

138. Due to Defendants' failure to reasonably investigate, Defendants further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate, incomplete, and/or materially misleading information in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

139. Defendants' continued inaccurate and/or materially misleading reporting on the Debt in light of their knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

140. Defendants failure to comply with Metro 2 also indicates their actions were willful.

141. Moreover, Experian's failure to comply with procedures it promised to implement under the *White* Order indicate Experian's actions were willful.

142. Reckless disregard of a requirement of the FCRA qualifies as a willful violation of the FCRA within the meaning of § 1681n(a). *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

143. Based upon Defendants' knowledge of the Debt, even if Defendants could claim they did not willfully violate the FCRA, their conduct was at the very least done with reckless disregard of their obligations under 15 U.S.C. § 1681e(b), and/or 15 U.S.C. § 1681i, and/or 15 U.S.C. § 1681s-2(b).

144. Defendants' continued inaccurate, incomplete, and/or materially misleading reporting has caused Plaintiff to suffer actual damages, including, without limitation: fear of credit denials, out-of-pocket expenses in challenging Defendants' reporting, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, and emotional distress.

145. While the inaccurate reporting was on Plaintiff's Experian and Equifax credit reports, Plaintiff was denied a rental by several landlords.

146. The denials were extremely stressful for Plaintiff as they came at a time when Plaintiff and her three children were forced to move out of their home as a result of a divorce.

147. Plaintiff lost several hundred dollars in rental application fees paid by Plaintiff.

148. Plaintiff suffered weight loss and the ordeal has aggravated Plaintiff's pre-existing depression and anxiety.

149. Plaintiff suffers ongoing fear, sleeplessness, rapid heartbeat, irritability, and mental distraction.

150. Defendants' reporting and the dissemination of inaccurate account information to third parties has caused Plaintiff to suffer humiliation and shame.

151. Upon information and belief, Defendants' reporting caused a significant lowering of Plaintiff's credit scores on Plaintiff's Experian and Equifax credit reports.

152.  By reporting inaccurate, incomplete, and/or materially misleading account information, Defendants' acts and omissions have resulted in the illegitimate suppression of Plaintiff's FICO credit score and other credit rating model scores.

153.  Defendants' actions and omissions have caused Plaintiff's credit report to falsely indicate that Plaintiff owed hundreds of dollars on the Debt and was past due on her obligations.

154.  Creating the false impression of Plaintiff owing on the Debt creates a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's Experian credit reports that is engaged in judgment-based lending.

155.  Specifically, after the derogatory reporting of the Debt identified herein appeared on her Experian credit report, Plaintiff was denied credit.

156.  Plaintiff's Experian and Equifax credit reports were also published to third parties while the derogatory information complained about herein was present on Plaintiff's Experian and Equifax credit reports.

157.  Defendants therefore caused a defamation-type harm upon Plaintiff.

158.  Additionally, despite Plaintiff's discharge, Plaintiffs calls to TD, the bankruptcy discharge, and Plaintiff's disputes, TD continues its collection of the Debt, as evidenced by a complaint against Plaintiff, filed on December 9, 2022, in Johnson County Superior Court, Johnson County, Indiana.

159.  As an additional example of Defendants' failures, on a credit report published by TransUnion LLC, the Debt was correctly reported as subject to a Chapter 7 Bankruptcy, with no balance, past due, or other derogatory remarks reporting.

160.    By reporting inaccurate and/or materially misleading account information after notice and confirmation of their errors, Defendants failed to take the appropriate measures as required under 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

### FIRST CAUSE OF ACTION
### FCRA - 15 U.S.C. § 1681 *et seq.*

161.    Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

162.    The foregoing acts and omissions constitute numerous and multiple violations of the FCRA, including, but not limited to 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i, and 15 U.S.C. § 1681s-2(b).

163.    The above-described violations by Defendants were willful, allowing Plaintiff to recover under 15 U.S.C. § 1681n.

164.    As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or statutory damages of not less than $100.00 and not more than $1,000.00, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

165.    In the alternative, Defendants were negligent in their actions, which entitled Plaintiff to recover und 15 U.S.C. § 1681o.

166.    As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

### REQUEST FOR A JURY TRIAL

167.    Plaintiff is entitled to, and demands, a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

1.     A declaratory judgment that Defendants' actions as discussed herein are unlawful;

2.     Plaintiff's actual damages;

3.     Statutory damages of not less than $100 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), against each Defendant;

4.     Punitive damages against each Defendant, pursuant to 15 U.S.C. §1681n(a)(2);

5.     An award of costs of litigation and reasonable attorneys' fees against each Defendant, pursuant to 15 U.S.C. § 1681o(a)(2) and/or 15 U.S.C. § 1681n(a)(3); and

6.     Any other relief the Court may deem just and proper.

Dated: January 11, 2023

Respectfully Submitted,

By:  _/s/Richard J. Shea_

Richard J. Shea, Esq., # 21396-53
Sawin & Shea, LLC.
Attorneys for Plaintiff
6100 N. Keystone Avenue, Suite 620
Indianapolis, IN 46220
Telephone: (317) 255-2600
Facsimile: (317) 255-2905
E-mail: rshea@sawinlaw.com